UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAINSTREAM MEDIA, EC,

    Plaintiff,

    v.

PETER RIVEN, et al.,

    Defendants.
_____/

No. C 08-3623 PJH

**ORDER GRANTING MOTION TO DISMISS**

Before the court is defendant Alexander Hydes' motion to dismiss for lack of personal jurisdiction. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

## BACKGROUND

The facts below are taken from the complaint, and from declarations filed in connection with the present motion as well as previously-filed motions.

Plaintiff Mainstream Media, EC ("Mainstream") is a Bahrain (non-resident) exempt closed stock company, apparently based in Australia. Mainstream is an online news service consisting of a network of several hundred stand-alone news sites, covering major cities, nations, and regions around the world. It also provides website development and maintenance services.

In 2002, Mainstream purchased a domain name – fm.net ("the disputed domain"). Mainstream registered the fm.net domain name with the domain name registrar BulkRegister.com, and asserts that the disputed domain was an integral and essential part of its business.

In July 2006, Christopher Shaun Birmingham ("Birmingham"), a former Mainstream employee living in New South Wales, Australia, hacked into Mainstream's computer system, and managed to transfer ownership of the disputed domain to a fictitious person – "Peter Riven" ("Riven"). Using this fictitious name, Birmingham as "Riven" registered the disputed domain with the domain registrar Dynadot LLC ("Dynadot"), a California limited liability company having an office in California. Birmingham also changed the listed address from Mainstream's to the address controlled by "Riven." Mainstream claims that at the time the theft was accomplished, the fm.net domain name had a value in excess of $100,000.

In order to accomplish the registration, "Riven" entered into a contract with Dynadot. Mainstream asserts that the contract included the following paragraph:

> This Agreement shall be deemed entered into in the State of California. This Agreement shall be governed by the laws and judicial decisions of the State of California. You agree to submit to the exclusive subject matter jurisdiction, personal jurisdiction, and venue of the United States District Court for the Northern District of California for any and all disputes concerning, relating to, or arising out of this Agreement, or between You and Dynadot, whether or not such dispute involves other parties. If there is no jurisdiction in the United States District Court for the Northern District of California, then You agree that jurisdiction shall be in the courts of San Mateo County, California.

At some point in August 2006, Birmingham operating as "Riven" sold the fm.net domain name on eBay to Alexander Hydes ("Hydes"), residing in London, UK, for $20,000. The $20,000 was transferred through escrow.com, Inc. ("escrow.com"), an on-line escrow agent incorporated in Delaware with a place of business in Irvine, California. The transaction was initiated on escrow.com on August 13, 2006, and was completed with the disbursement of the funds on August 22, 2006. Mainstream asserts that Hydes used a yahoo.com e-mail address to accomplish the transfer from his end.

Mainstream's director John McEvoy ("McEvoy") first discovered that the disputed domain had been stolen on August 22, 2006, when he attempted to access one of Mainstream's websites and was redirected to another website offering the disputed domain for sale. On August 23, 2006, McEvoy contacted Dynadot, seeking to have Dynadot "lock" the disputed domain and prevent its transfer, and also contacted escrow.com in an attempt

to have a stop payment put on the payment from Hydes to "Riven." This attempt was unsuccessful. Also on August 23, 2006, McEvoy contacted Hydes by e-mail (at the e-mail address shown on the new registration) notifying him of the theft of the disputed domain.

On August 24, 2006, McEvoy sent Hydes an e-mail asking him to return the domain name to Mainstream. Also on August 24, 2006, McEvoy notified the police in New South Wales regarding the unlawful theft and transfer. (Mainstream/McEvoy did not know the identity of the thief at this point, but did know that the $20,000 had been destined for New South Wales.)

According to Mainstream, Birmingham was convicted in New South Wales, sentenced to community service, and ordered to make restitution to Mainstream in the amount of $25,800. However, Birmingham apparently has no assets, and has not paid any of the money. Mainstream asserts that the New South Wales police do not know Birmingham's current address.

Mainstream claims that Hydes now controls the disputed domain (although Mainstream also asserts that in October 2008, Hydes transferred the domain name to an unknown registrant, who is the current registered owner). Mainstream alleges that the registration remains with Dynadot.

The present action was filed on July 29, 2008, against "Riven," Hydes, Dynadot, escrow.com, and fm.net. The complaint asserts nine causes of action: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) action to quiet title under California Code of Civil Procedure § 760.101; (3) conversion; (4) civil violation of California Penal Code § 496; (5) identity theft, under California Civil Code § 1798.93; (6) negligence; (7) computer fraud under the Comprehensive Computer Data and Access Act, California Penal Code § 502(c); (8) trespass to chattels; and (9) unfair competition, in violation of California Business & Professions Code § 17200. Mainstream seeks damages and injunctive relief in the form of an order requiring Dynadot (or the current domain registrar) to transfer the disputed domain to Mainstream.

On October 23, 2008, Mainstream filed a notice of voluntary dismissal of defendant

3

Internet Escrow Services, Inc. (sued as escrow.com, Inc.) from the lawsuit. On November 14, 2008, defendant Dynadot filed a motion to dismiss. Pursuant to stipulation, the court dismissed Dynadot from the action on December 11, 2008. As of the date of this order, neither "Riven" nor fm.net has appeared in this action, and plaintiff has filed no proof of service of the summons and complaint as to those defendants. Thus, Hydes appears to be the only viable defendant. Of the nine causes of action, all are asserted against Hydes with the exception of the sixth cause of action for negligence.

On December 18, 2008, the court granted Mainstream's motion for alternative service on Hydes pursuant to Federal Rule of Civil Procedure 4(f)(3), directing that the prior delivery of service documents by Mainstream to Hydes via e-mail, international mail, and international courier (Federal Express) was effective service of process, and giving Hydes 30 days to respond to the complaint.

Nevertheless, Hydes did not respond to the complaint. Mainstream filed a request to enter default, and default was entered on January 28, 2009. On February 2, 2009, the court received a letter from Hydes, dated January 26, 2009, stating that he wished to file a motion to dismiss for lack of personal jurisdiction. He also disputed Mainstream's claim that certain documents had been properly served.

On February 10, 2009, the court issued an order advising Hydes that if he was contesting the entry of default, he must file a motion requesting that entry of default be set aside. On March 10, 2009, the court received a letter from Hydes dated February 20, 2009, stating that he wished to seek an order setting aside the entry of default, based on inadequate service, and also based on his having communicated his intent to contest the action prior to Mainstream's having submitted the request for entry of default. Mainstream opposed the request, arguing that service had been adequate, and that Hydes had been given ample opportunity to respond to the complaint, and had simply chosen to ignore the papers that had been served on him. On March 24, 2009, Mainstream filed a motion for default judgment, based on the prior entry of default by the clerk.

On March 27, 2009, the court granted the motion to set aside the default, and set a

4

briefing schedule for the present motion to dismiss. Hydes filed his motion on April 28, 2009, and Mainstream filed an opposition on May 18, 2009. Hydes filed no reply to the opposition.

## DISCUSSION

A.  Legal Standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). In such cases, the court need only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Id. Although the plaintiff cannot rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true. Id. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. Id.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and the federal long-arm statute, Fed.R.Civ.P. 4(k)(2), require compliance with due process requirements. Id. at 1155.

Absent one of the traditional bases for personal jurisdiction (presence, domicile, or consent), due process requires that the defendant have certain "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The extent to which a federal court can exercise personal jurisdiction will depend on the nature and quality of presence, or the nature and quality of the defendant's contacts with the forum state. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445-46 (1952).

Personal jurisdiction over a non-resident of the forum state can be either "general" or "specific." If a defendant is domiciled in the forum state, or if his activities there are "substantial, continuous, and systematic," a federal court when permitted by the state's long-arm statute may exercise general jurisdiction as to any cause of action, even if unrelated to the defendant's activities within the state. Id. If, on the other hand, a non-resident's contacts with the forum state are not sufficiently continuous and systematic for general jurisdiction, that defendant may still be subject to specific jurisdiction on claims related to its activities or contacts in the forum. See Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006).

Here, Hydes has submitted a declaration stating that he "ha[s] no personal connection to California, including residing in the United Kingdom, never having been to California and owning no assets there." The court interprets this as an assertion that the court lacks general jurisdiction over Hydes, and Mainstream does not appear to contest this proposition. Rather, Mainstream argues that Hydes is subject to specific jurisdiction.

Specific jurisdiction is established by showing three elements: (1) the out-of-state defendant purposefully directed its activities toward a resident of the forum state; (2) the cause of action arose out of or resulted from the defendant's forum-related action; and (3) the forum's exercise of personal jurisdiction is reasonable. Myers v. Bennett Law Ofices, 238 F.3d 1068, 1072 (9th Cir. 2001); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985); Schwarzenegger, 374 F.3d at 802.

"If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach, 453 F.3d at 1155. In addition, however, courts including the Ninth Circuit have adopted a "flexible approach" that may allow personal jurisdiction with a lesser showing of minimum contacts where dictated by considerations of reasonableness. See Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1188 n.2 (9th Cir. 2002).

B.    Defendant's Motion

In the complaint, Mainstream alleges that both "Riven" and Hydes are subject to

6

personal jurisdiction in this court because they "purposefully availed themselves of the privilege of conducting activities in this forum, and [p]laintiff's claims are directly related to and/or arise out of their forum[-]related activities," in that "Riven" and Hydes "entered into contracts with a California entity which has a forum selection clause in this State" and also "purport to hold, or have held, property in this State" out of which plaintiff's claims arise.

In the present motion, Mainstream argues that Hydes is subject to this court's jurisdiction because he committed intentional acts, which he expressly aimed at California, which caused harm in California, and which form the basis of the claims alleged in this action. First, Mainstream contends that the disputed domain is located in this district, because Dynadot (the registrar) is located here, and a domain name exists in the location of the registry.

Second, Mainstream contends that the alleged tortious activity occurred in California, in the sense that Hydes targeted California by utilizing and contracting with California corporations (Dynadot and escrow.com) to effectuate the unlawful transfer of property located elsewhere. Mainstream argues that by entering California through the Internet in order to convert property located in California, Hydes subjected himself to personal jurisdiction in California for claims related to the conversion. Mainstream asserts that Hydes' conversion was expressly aimed towards California because the property is located in California, and the harm was felt in California.

In a related argument, Mainstream contends that Hydes entered into contracts with Dynadot, a California business, and yahoo.com, a domain registered with VeriSign, Inc., also located in California, to facilitate the fraudulent transfer of the disputed domain, and employed the services of escrow.com, another California company, in an "attempt to cover his tracks."

Mainstream asserts further that Hydes' misconduct satisfies the "effects test," because it involves intentional acts, expressly aimed at California (the forum state), which caused harm that Hydes knew would likely be suffered in California. Mainstream claims that Hydes "had to have known" that his misconduct would cause harm likely to be suffered

1  in California, because he knew the property he was converting was located in California,
2  and also knew that he was using California-based domain registration, escrow, and e-mail
3  services.

4  Finally, Mainstream contends that it will be left without a remedy if the court does not
5  exercise jurisdiction over Hydes. Mainstream asserts that it has been deprived of a
6  valuable asset, and that Hydes has also been wrongfully collecting revenue generated by
7  the disputed domain.

8  As noted above, Hydes (a UK resident who is proceeding pro se) did not file a reply
9  to Mainstream's opposition. In his motion, he asserts that the disputed domain is no longer
10 registered with a registrar located in California, but rather is registered in the African state
11 of Burundi with Afriregister S.A., and suggests that rather than proceeding here,
12 Mainstream should file suit in Burundi. Other than that, he provides no information
13 regarding whether he acquired the disputed domain with knowledge that it was stolen,
14 whether he entered into a contract with Dynadot or any other California corporation,
15 whether he presently owns the disputed domain, or when and under what circumstances
16 the registration of the disputed domain was transfered from Dynadot to Afriregister S.A.

17 To establish the first element of the specific jurisdiction test, Mainstream must show
18 that Hydes either purposefully directed his activities at residents of California, or purposely
19 availed himself of the privilege of conducting activities within California. See Hanson v.
20 Denckla, 357 U.S. 235, 253-54 (1958). Courts generally apply the purposeful direction
21 prong in intentional tort cases, and apply the purposeful availment prong when the
22 defendant invokes the benefits and protections of the laws of the forum, such as in contract
23 cases. Schwarzenegger, 374 F.3d at 802-03; see also Yahoo!, Inc. v. La Ligue Contre Le
24 Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

25 Here, Mainstream asserts no contract claim, and primarily tort causes of action. The
26 court therefore considers whether Hydes purposefully directed his activities at California,
27 and applies an "effects" test that "focuses on the forum in which the defendant's actions
28 were felt, whether or not the actions themselves occurred within the forum." Yahoo!, 433

F.3d at 1206.

Under the "effects" test, the defendant (1) must have committed an intentional act (2) that was expressly aimed at the forum state, (3) which caused harm that the defendant knew was likely to be suffered in the forum state. Id. at 1206. The "brunt" of the harm need not be suffered in the forum state, so long as a "jurisdictionally sufficient" amount of harm is suffered there. Id. at 1207. The court must consider both the extent of the defendant's contacts with the forum, and the degree to which the plaintiff's suit is related to those contacts. "A strong showing on one axis will permit a lesser showing on the other." Id. at 1210.

Because the present motion is based on written materials rather than on an evidentiary hearing, Mainstream is required only to make a prima facie showing of jurisdictional facts. Schwarzenegger, 374 F.3d at 800. A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

Mainstream argues that Hydes purposefully directed his activities toward residents of California, and that the claims against Hydes arise from his contacts with California, based on the assertions that Hydes entered into a contract with a California-based registrar (Dynadot) to register the disputed domain after he initiated the unlawful transfer; used an e-mail address owned and maintained by a California corporation (yahoo.com, registered with VeriSign, Inc.) to facilitate the unlawful transfer; employed the services of a California corporation (escrow.com) to "cover his tracks" and to facilitate the fraudulent sale and transfer of the disputed domain. Mainstream also contends that the stolen property – the disputed domain – is located in California.

The court has considered the evidence submitted by the parties in this case, including Hydes' declaration filed in support of his motion, and the declarations and attached exhibits filed by Mainstream in opposition to Hydes' motion and in support of various other motions filed in this case.

As an initial matter, the court notes that none of the remaining parties is a resident of

California. Mainstream is a Bahrain company, owned by McEvoy. There is no evidence that McEvoy is a California resident or that Mainstream has a physical presence in California. Hydes is a resident of the UK, and "Riven" is a resident of Australia. While the disputed domain was, at the time of the sale to Hydes, registered with Dynadot, a California company, it appears that it is now registered with a registrar located in Africa.

Moreover, the evidence provided by Mainstream shows that the disputed domain was initially registered with Dynadot by "Riven," not by Hydes, as the registration occurred prior to the sale of the disputed domain to Hydes on eBay. The fact that the name of the registrant was changed from "Riven" (a resident of Australia) to Hydes (a UK resident) after the sale is not sufficient to show that Hydes directed his activities toward California.

Hydes' purchase of the disputed domain was not an action that was directed toward a California resident, and there is no evidence that Hydes knew at the time he purchased the disputed domain that it was stolen. The evidence indicates that transfer of the funds through escrow.com was a condition of the sale on eBay, imposed by "Riven," who created the account with escrow.com Mainstream has provided no evidence suggesting that Hydes signed a contract with escrow.com, or intentionally opted to deal with a California company.

Nor was the harm perpetrated in California, or felt in California. Of the claims asserted against Hydes, the first, third, fourth, fifth, seventh, and eighth causes of action assert claims based on the hacking of Mainstream's computer system and the theft of the disputed domain by "Riven." The ninth cause of action for unfair competition is dependent on the first, third, fourth, fifth, and seventh causes of action. The second cause of action, seeking to quiet title, is dependent on a finding that Hydes claims an interest without right in the disputed domain.

According to the evidence provided by Mainstream, Birmingham, operating from Australia as "Riven," stole the disputed domain, and subsequently sold it to Hydes. Mainstream does not argue in its opposition, and the evidence does not show, that Hydes was involved in the hacking of Mainstream's computer system or in the theft from

10

Mainstream. The harm resulting from the theft was felt by Mainstream, which is not located in California. Mainstream's only connection with California appears to be based on the fact that California residents may access one of its on-line news sites for news of their local area.

Finally, the fact that Hydes has an e-mail account with yahoo.com, which is registered with VeriSign, a company located in California, is not sufficient to show purposeful availment. It is conceivable that hundreds of thousands of individuals living in many different parts of the world have e-mail accounts with yahoo.com, and that fact is not sufficient to subject them to personal jurisdiction in California.

Because the court finds that Mainstream has failed to establish that Hydes purposefully directed his activities toward residents of California, or that the claims asserted by Mainstream arise from Hydes' forum-related activities, the court does not consider whether the exercise of jurisdiction over Hydes would be reasonable.

## CONCLUSION

The three elements required to establish specific jurisdiction are intended to protect non-residents from being sued in foreign courts as a result of random, fortuitous, or attenuated contacts over which they have no control. Burger King, 471 U.S. at 475. Because Mainstream has failed to demonstrate facts supporting specific jurisdiction over defendant Alexander Hydes, the motion to dismiss for lack of personal jurisdiction is GRANTED.

No later than July 24, 2009, Mainstream shall either file a notice of dismissal of defendants Peter Ryan and fm.net, or show cause in writing why the court should not dismiss those defendants pursuant to Federal Rule of Civil Procedure 4(m).

**IT IS SO ORDERED.**

Dated: July 17, 2009

PHYLLIS J. HAMILTON
United States District Judge